## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| BLUE WAVE PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: |
| | ) | 1:21-cv-05069-SCJ |
| v. | ) | |
| | ) | |
| FREETIME, LLC, | ) | **JURY TRIAL DEMANDED** |
| JAMES COXWORTH, AND | ) | |
| MARK CLEMENTS | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff BLUE WAVE PRODUCTS, INC. ("Blue Wave", "the Company," or "Plaintiff") by and through the undersigned counsel, hereby file this Complaint seeking injunctive relief and damages against Defendants FREETIME, LLC, ("Freetime Fun"), JAMES COXWORTH ("Coxworth") and MARK CLEMENTS ("Clements").

## PARTIES, JURISDICTION, AND VENUE

1.     Blue Wave is a corporation organized under the laws of the State of Illinois and registered to do business in Georgia.

2.     Blue Wave is a leading manufacturer and distributer in the Pool and Home Leisure industry.  Blue Wave takes a full-service approach to provide its loyal customers with high quality product lines ranging from full above-ground pool kits,

a wide range of pool accessories/equipment, unique brands of in-home table games, saunas and other pool and home leisure related products.

3.    Defendant Freetime Fun is an Illinois Corporation with its principle place of business in Batavia, Illinois.  Defendant Freetime Fun may be served through its registered agent:  Keay & Costello, P.C., 128 South County Farm Road, Wheaton, Illinois 60187.

4.    This Court has both general and specific personal jurisdiction over Defendant Freetime Fun.  The Georgia long-arm statute provides for the exercise of personal jurisdiction over a nonresident who:  (1) transaction any business within this state; (2) commits a tortious act or omission within this state…; or commits a tortious injury in this state caused by an act or omission outside this state if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state…"

5.    Like Blue Wave, Defendant Freetime Fun is a manufacturer and distributer in the Pool and Home Leisure industry with wide ranging product lines, including but not limited to full above-ground pool kits, pool accessories/equipment various types of in-home table games.

6.    As set forth herein, Defendant Freetime Fun knew about Defendant Coxworth and Defendant Clements' restrictive covenants with Blue Wave, but

- 2 -

nonetheless fostered and encouraged the breach of the restrictive covenants with Blue Wave.  Defendant Freetime Fun also knew or should of known that Defendant Coxworth and Defendant Clement have and are misappropriating Blue Wave's confidential, proprietary and trade secret information.

7.     Defendant Freetime Fun targets customers throughout the state of Georgia through their own online retail website (www.freetimefun.com), though other online retailers including but not limited to Amazon, they regularly transact business within Georgia and they derive substantial income from services rendered in Georgia.

8.     Defendant Coxworth is the owner and manager of Freetime Fun, the former CEO of Blue Wave and a minority shareholder in Blue Wave.  Defendant Coxworth is a resident of and may be served in the State of Illinois, or wherever he may be located as provided by law.

9.     As set forth herein, Defendant Coxworth signed a Non-Disclosure Agreement that contained a Georgia choice of law provision and a forum selection clause for the Northern District of Georgia.  As a result of the forum selection clause in the Non-Disclosure Agreement, he has consented to the jurisdiction of this Court. Further, Defendant Coxworth transacts business in Georgia, has direct contact with Georgia and the instant lawsuit is directly related to acts or omissions and his

- 3 -

contacts with Georgia, and thus satisfies the parameters of Georgia's long-arm statute.

10.    Defendant Clements is a former Blue Wave employee, and upon information and belief a current Freetime Fun employee.  Defendant Clements is a resident of and may be served in the State of California, or wherever he may be located as provided by law.

11.    As set forth herein, Defendant Clements signed a Stock Option Agreement containing restrictive covenants and a Georgia choice of law provision. Further, Defendant Clements transacts business in Georgia, has direct contact with Georgia and the instant lawsuit is directly related to acts or omissions and his contacts with Georgia, and thus satisfies the parameters of Georgia's long-arm statute.

12.    This Court has proper jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as this action arises under the laws of the United States, specifically, under 18 U.S.C. § 1836 *et seq*., the federal Defend Trade Secrets Act of 2016 ("DTSA").  Furthermore, this Court has supplemental jurisdiction of the state law claims and the remaining claims articulated herein, pursuant to 28 U.S.C. § 1367.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events or omissions giving rise to the claims

010-9290-4896/4/AMERICAS

asserted herein occurred in this district and because this Court has personal jurisdiction over the Defendants.

## FACTS

14.    In the highly competitive industry in which Blue Wave operates, its confidential, proprietary, and trade secret information are critical to maintaining Blue Wave's competitive position in the marketplace.  Accordingly, Blue Wave takes a number of steps to protect the confidentiality of its information.  Such steps include, but are not limited to:  (1) requiring the execution of non-disclosure, non-use, non-compete, non-solicitation and related restrictive covenants; (2) conducting on-the-job security training and utilizing occupational security best practices; (3) implementing electronic security measures, such as use of passwords, security time-outs on computers, and segregation of confidential information; and (4) employing physical security measures, such as placing locks on offices, doors, and file cabinets.

### *Freetime Fun Owner and Blue Wave Minority Shareholder, Defendant Coxworth, and Defendant Coxworth's Non-Disclosure Agreement*

15.    Defendant Coxworth is the former majority shareholder in a predecessor entity of Blue Wave.

16.    On or about October 12, 2012, Defendant Coxworth sold his controlling interest in Blue Wave's predecessor entity to Blue Wave.

17.    In connection with the sale, Defendant Coxworth retained a twenty percent (20%) interest in Blue Wave.  Defendant Coxworth still maintains that interest in Blue Wave today.

18.    Additionally, on October 12, 2012, Defendant Coxworth executed an Employment Agreement with Blue Wave where he agreed, among other things, that he shall be restricted from disclosing all items of Confidential Information that are deemed Trade Secrets as defined in the Employment Agreement "for so long as such information continues to be a Trade Secret."[1]

19.    Specifically, Section 5 (c) of the Employment Agreement defines a Trade Secret as:

> "Trade Secret" means business or technical information of the Company, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, process, financial data or list of actual or potential customers or suppliers that:  (i) derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.  Trade Secrets shall specifically include, without limitation, information relating to the design, manufacture, conversion, application, know-how, marketing, distribution, research and development relating to the Company's present, past or demonstrably

---

[1] A true and correct copy of Defendant Coxworth's Employment Agreement with Blue Wave is attached hereto as **Exhibit A.**

anticipated    prospective    products    and/or    computer
programs.

*See* **Exhibit A**, Section (5)(c).

20.    Defendant Coxworth remained involved with the day to day
management and continued to perform work for Blue Wave pursuant to a Consulting
Agreement dated October 13, 2015.

21.    Defendant Coxworth had significant responsibilities and oversaw the
managerial matters and projects in his role with Blue Wave.  Specifically, after the
company was purchased by River Capital, Defendant Coxworth served as the CEO
of Blue Wave.  Additionally, he worked as a consultant for Blue Wave into late
2019, and he remains a shareholder in Blue Wave.

22.    In his capacity as the former CEO of Blue Wave and as a current
shareholder of Blue Wave, Defendant Coxworth has had access to Blue Wave's
private and proprietary strategic company information, including but not limited to,
customer lists and information, supplier lists and information, pricing information,
product development information, product manuals, illustrations and product copies,
and other trade secret information that the company deems private and proprietary
in nature.

23.    In connection with his request to review confidential, valuable and
proprietary Blue Wave information and in furtherance of Blue Wave's business
practice of protecting its legitimate business interests and confidential, proprietary

- 7 -

and trade secret information, Blue Wave required Defendant Coxworth to execute a

Non-Disclosure Agreement (the "Non-Disclosure Agreement") on May 26, 2017.[2]

24.    Pursuant to the Non-Disclosure Agreement, Defendant Coxworth

explicitly agreed and recognized that as a shareholder in Blue Wave, Defendant

Coxworth has access to confidential, valuable and proprietary financial documents

and information that should be shielded from disclosure.  *See* **Exhibit B**.

25.    Specifically, the Non-Disclosure Agreement states, in relevant part, as

follows:

> Coxworth has requested that Blue Wave provide certain
> audited financial statements, which are considered by Blue
> Wave to be confidential, valuable and proprietary, for the
> limited purpose of reviewing such financial statements in
> his capacity as a shareholder of Blue Wave.
>
> **Blue Wave has previously disclosed to Coxworth
> certain confidential shareholder, business and other
> financial information of Blue Wave.**

*See* **Exhibit B**, Page 1.  (Emphasis added).

26.    Confidential Information is specifically defined in Paragraph 1 of the

Non-Disclosure Agreement as:

> **"Confidential Information"** shall mean any data or
> information, without regard to form, that is of value to
> Blue Wave, is treated by Blue Wave as confidential and is
> not generally know.  To the extent consistent with the
> forgoing, Confidential Information includes, but is not
> limited to, the Financial Statements, the Previously

---

[2] A true and correct copy of Defendant Coxworth's Non-Disclosure Agreement with Blue Wave
is attached hereto as **Exhibit B.**

Disclosed Information, and the Future Disclosed Information. Confidential information also include any information described in this paragraph which Blue Wave obtains from another party and which Blue Wave treats as proprietary or designates as confidential information, whether or not owned or developed by Blue Wave. Failure to mark any Confidential Information as confidential shall not alone affect its status as Confidential Information under this Agreement. **"Confidential Information"** also includes Confidential Information of Disclosing Party's Subsidiaries and affiliates.

*See* **Exhibit B**, Section (1)(a).

27. Pursuant to the Non-Disclosure Agreement, Defendant Coxworth agreed to the following Restrictions on Use of Confidential Information:

> (a) **Coxworth will not use, nor will Coxworth allow others to use, any Confidential information for any purpose other than for the limited purpose of reviewing such information in order to determine the value of Coxworth's investment in Blue Wave. Coxworth will not, except as expressly authorized in writing by Blue Wave, use, copy, or disclose, or permit any person access to, any Confidential Information.**

> (c) Coxworth will take commercially reasonable measures to ensure that no other person shall have access to the Confidential Information, [other than his accountants, attorneys, financial advisors and lenders who needed to know the Confidential Information to value Coxworth's interest in Blue Wave.]

*See* **Exhibit B**, Section 2 (a) and (c). (Emphasis added).

28. The Non-Disclosure Agreement binds, restricts and prevents Coxworth from disclosing Confidential Information for "five years from the date of possession, knowledge or acquisition of Confidential Information" or until May 26, 2022 (five

- 9 -

years from the date of the Non-Disclosure Agreement), *whichever is longer*.  *See* **Exhibit B**, Section 2 (d).

29.    Importantly, as reflected in the Non-Disclosure Agreement, Coxworth unequivocally agreed that in the event of his breach, as is the case here, Blue Wave shall be entitled to injunctive relief.

30.    Additionally, Defendant Coxworth specifically consented to the jurisdiction of this Court.  Section 3 (h) of the Non-Disclosure Agreement states, in relevant part:

> This Agreement and the rights and liabilities of the parties to the Agreement shall be determined in accordance with the laws of the State of Georgia, without giving effect to its principles of conflicts of laws.  **Each party hereby irrevocably and unconditionally agrees that it will not commence any action, litigation or proceeding of any kind whatsoever against the other party in any way arising from or relating to this Agreement, in any forum other than the United States District Court for the Northern District of Georgia** or, if such court does not have subject matter jurisdiction, the courts of the State of Georgia sitting in Fulton County, and any appellate court from any thereof.  **Each party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation or proceeding only in [the] United States District Court for the Northern District of Georgia** or, if such court does not have subject matter jurisdiction, the courts of the State of Georgia sitting in Fulton County.

*See* **Exhibit B**, Section 3 (h).  (Emphasis added).

- 10 -

***Former Blue Wave Employee, Defendant Clements, and Defendant Clements'
Stock Option, Non-Disclosure and Non-Use of Confidential Information, Non-
Solicitation and Non-Competition Agreement***

31.    Defendant Clements joined Blue Wave on April 2, 2021 as the Vice President of Product Management.

32.    During his tenure with Blue Wave, Defendant Clements rose up the ranks at Blue Wave and served in various high-ranking, management level positions.

33.    Defendant Clements' last position at Blue Wave was as a Vice President of Product Development and Quality Control at Blue Wave.

34.    In his role as a Vice President of Product Development and Quality Control, Defendant Clements' responsibilities, included but were not limited to, developing new products, sourcing products with suppliers, establishing competitive selling prices, overseeing all product management functions and personnel, and providing and aggregating sales materials for account presentations.

35.    During his tenure with Blue Wave, Defendant Clements had access to Blue Wave's private and proprietary strategic company information, including but not limited to, customer lists and information, supplier lists and information, pricing information, product development information, product manuals, illustrations, product copies and other trade secret information that the company deems private and proprietary in nature.

36.     Additionally, during his employment with Blue Wave, Defendant Clements executed a Stock Option Agreement on October 7, 2019.[3]

37.     The Stock Option Agreement contained multiple covenants, including a non-disclosure of confidential information covenant, nonuse of confidential information covenant, an acknowledgement regarding Blue Wave inventions and patents, a non-solicitation covenant, and non-competition provisions and restrictions.

38.     Specifically, Section 5 of the Stock Option Agreement titled "Nondisclosure and Nonuse of Confidential Information" states, in relevant part:

> **Clements shall not disclose or use at any time, during his employment by Blue Wave and for a period of one (1) year thereafter, any Confidential Information of which Clements is or becomes aware,** except to the extent that such disclosure or use is directly related to and required by Clements' performance of dudes assigned to Clements by Blue Wave.
>
> **Clements shall deliver to Blue Wave at the termination of Clements' employment with Blue Wave,** or at any time Blue Wave may request **all memoranda, notes, plans, records, reports, computer tapes and software and other documents and data (and copies thereof) that contain Confidential Information or Work Product which he may then possess or have under his control.**

See **Exhibit C**, Section 5 (a).  (Emphasis added).

---

[3] A true and correct copy of Defendant Clement's Stock Option Agreement is attached hereto as **Exhibit C.**

39.    Confidential Information is defined in Section 5(b) of the Stock Option

Agreement as:

> [T]he term "Confidential Information" means **information that is not generally known to the public and that is used, developed or obtained by Blue Wave in connection with its business**, including but not limited to (i) **information, observations and data obtained by Clements while employed by Blue Wave (including those obtained prior to the date of this Agreement) concerning the business or affairs of Blue Wave**, (ii) **products or services**, (iii) **fees, costs and pricing structures**, (iv) **designs**, (v) analyses, (vi) drawings, photographs and reports, (vii) computer software, including operating systems, applications and program listings, (viii) flow charts, manuals and documentation, (ix) data bases, (x) accounting and business methods, (xi) inventions, devices, new developments, methods and processes, whether patentable or unpatentable and whether or not reduced to  practice, (xii) **customers and clients and customer or client lists**, (xiii) other copyrightable works, (xiv) **all production methods, processes, technology and trade secrets**, and (xv) all similar and related information in whatever form.

*See* **Exhibit C,** Section 5(b).  (Emphasis added).

40.    Blue Wave terminated Defendant Clements in December of 2020.

41.    Defendant Clements agreed not to disclose Confidential Information

for a period of one year after date of his termination.

42.    In addition to agreeing to not disclose Blue Wave's Confidential

Information, as defined, Clements also agreed not to disclose Trade Secrets "for so

- 13 -

long as such Information constitutes a Trade Secret" as defined in the Stock Option Agreement.

43.     Trade Secret is defined in Section 5(c) of the Stock Option Agreement as:

> **"Trade Secret" means business or technical information of Blue Wave**, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, process, financial data or **list of actual or potential customers or suppliers** that: (i) derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Trade Secrets shall specifically include, without limitation, information relating to the design, manufacture, conversion, application, know-how, marketing, distribution, research and development relating to Blue Wave's present, past or demonstrably anticipated prospective products and/or computer programs.

*See* **Exhibit C,** Section 5(c). (Emphasis added).

44.     During his employment with Blue Wave, Defendant Clements acknowledged that Blue Wave has certain inventions and patents that are unequivocally possession of Blue Wave.

45.     Specifically, Section 6 of the Stock Option Agreement titled "Inventions and Patents" states, in relevant part:

> Clements agrees that all inventions, innovations, improvements, developments, methods, designs, analyses,

- 14 -

drawings, reports, and all similar or related information which relates to Blue Wave's or any of its subsidiaries' actual or demonstrably anticipated business, research and development or existing or demonstrably anticipated future products or services and which are conceived, developed or made by Clements while employed by Blue Wave (including those conceived, developed or made prior to the date of this Agreement) ("Work Product") belong to Blue Wave or such subsidiary.

*See* **Exhibit C,** Section 6.

46.    In addition to the agreement to not disclose Confidential Information, Trade Secrets and Clements' acknowledgement of Blue Wave's inventions and patents, Clements also agreed to not solicit Blue Wave's employees or customers for a period of one year after the conclusion of his employment. *See* **Exhibit C,** Section 7.

47.    Section 7 of the Stock Option Agreement titled "Non-Solicitation" states, in relevant part:

(a)    Clements acknowledges that in the course of his employment with Blue Wave he has become familiar, and will become familiar, with Blue Wave's Trade Secrets and with other Confidential Information concerning Blue Wave and its predecessors and that his services have been and will be of special, unique and extraordinary value to the Company. Therefore, **Clements agrees that, during his employment by Blue Wave and for a period of one (1) year thereafter**, **Clements will not**, without the prior written approval of the Company, on his own behalf or in the service of or on behalf of others, **solicit, divert or contact any Restricted Customer for purposes of providing or offering products or services competitive with the products or services offered by Blue Wave.**

- 15 -

For purposes of this Agreement, the term "Restricted Customer" shall mean any person or entity (1) who was a customer of Blue Wave or actively sought prospective customer of Blue Wave during the two (2) years prior to the termination of Clements' employment by Blue Wave and (ii) with whom Clement had contact during Clements' employment with Blue Wave.

**(b)      During the Clements' employment by Blue Wave and for a period of one (1) year thereafter, Clements shall not directly or indirectly** through another entity **(i) induce or attempt to induce any employee of Blue Wave or any subsidiary to leave the employ of Blue Wave** or such subsidiary, or in any way interfere with the relationship between Blue Wave or any subsidiary, on the one hand, and any employee thereof, on the other hand, or (ii) **hire any person who was an employee of Blue Wave or any subsidiary at any time during Clements' employment with Blue Wave.**

*See* **Exhibit C,** Section 7 (a) and (b).  (Emphasis added).

48.      In addition to the aforementioned provisions protecting Blue Wave's legitimate business interests Clementss also specifically agreed to not compete directly or indirectly with Blue Wave for a period of one-year following the termination of his employment with Blue Wave.  *See* **Exhibit C**, Section 8.

49.      Section 8 of the Stock Option Agreement titled "Non-Competition" specifically states, in relevant part:

**For a period of one (1) year after the termination of Clements' employment by Blue Wave, Clements shall not, without the prior written consent of Blue Wave, directly or indirectly, serve in an executive or management capacity, including as an officer or director, or otherwise perform or undertake any duty**

- 16 -

**or responsibility substantially similar to any duty or responsibility he performed or had undertaken for Blue Wave**, on his behalf or in the service of or on behalf of any person, firm, partnership, corporation or unincorporated association or entity of any kind which is engaged in the business of marketing, **selling and distributing wholesale swimming pool equipment and supplies, sauna equipment and supplies, and recreational game tables (the "Business") anywhere within the United States and Canada (the "Territory").**

*See* **Exhibit C**, Section 8 (emphasis added).

50.    During his employment with Blue Wave, Defendant Clements was subject to restrictive covenants restricting his ability to disclose Confidential Information, Trade Secrets, an acknowledgment about Blue Wave's inventions and patents and covenants concerning his ability to solicit Blue Wave customers, Blue Wave employees and otherwise compete against Blue Wave during and following his employment with Blue Wave.

### *Defendant Freetime Fun, Defendant Coxworth and Defendant Clements' Theft and Misappropriation of Blue Wave's Confidential Information*

51.    Defendant Freetime Fun is an Illinois corporation established by Defendant Coxworth in October of 2020.

52.    Defendant Freetime Fun is also in the Pool and Home Leisure industry.

53.    Defendant Freetime Fun is a competitor of Blue Wave.

54.    Defendant Freetime Fun is Defendant Clements' current employer.

- 17 -

55.    Prior to accepting employment with Freetime Fun, Defendant Clements was employed by Blue Wave for approximately eight years and eight months.

56.    After his employment relationship with Blue Wave ended, Defendant Clements maintained confidential Blue Wave documents and information in his possession.

57.    Defendant Freetime Fun, Defendant Coxworth and Defendant Clements are now using confidential Blue Wave documents and information to improperly compete against Blue Wave.

58.    Defendant Freetime Fun is offering the same four product lines that Blue Wave offers; is copying and circulating proprietary text from the Blue Wave warranty; is using the Blue Wave manual layout and illustrations without permission and passing them on to consumers as their own; and copying Blue Wave's product copy for the purposes of selling Freetime Fun products to consumers.

59.    Defendant Freetime Fun has wholesale duplicated and converted Blue Wave's product manuals, illustrations and product copies for its own use in violation of the law.

60.    Defendant Freetime Fun has also hired away Blue Wave's shipping manager.

61.    Defendant Freetime Fun is importing products directly from one of Blue Wave's factories, Plusone Sports Technology Co., LTD. ("Plusone").

62.     Plusone was contacted in April of 2021 by Defendant Freetime Fun and was asked to begin making products for Freetime Fun.

63.     Prior to his termination from Blue Wave, Defendant Clements worked closely and directly with Plusone in his role with Blue Wave.

64.     In August 2021, Defendant Freetime Fun placed an order with Plusone as evidenced and reflected on the USA Bills Import Houses attached hereto as **Exhibit D.**[4]

65.     Further, Plusone has specifically admitted to working directly with Defendant Freetime Fun and Defendant Clements.

### *Blue Wave's Efforts to Curb Defendants' Improper Conduct*

66.     On October 13, 2021, Blue Wave sent a letter to Defendant Coxworth and Freetime Fun demanding that that Defendant Coxworth and Freetime Fun immediately cease and desist the illegal competition against Blue Wave and refrain from the continued misappropriation of Blue Wave's confidential and proprietary information.   Additionally, the letter demanded that Defendant Coxworth and Freetime Fun cease their interference with Blue Wave's contractual relationships.[5]

---

[4] A true and correct copy of the USA Bills Import Houses is attached hereto as **Exhibit D.**
[5] *See* **Exhibit E**, Letter from Blue Wave to Defendant Coxworth and Freetime Fun on October 13, 2021.

67.    In the letter, Blue Wave noted that it would pursue legal action if Defendant Coxworth and Freetime Fun failed to comply with Blue Wave demands. *See id*. at 2.

68.    In response to Blue Wave's October 13, 2021 letter, Defendant Coxworth and Freetime Fun, through counsel, responded by letter via email on October 18, 2021.[6]

69.    In that letter, Defendant Coxworth and Freetime Fun asserted without reservation that: they are not engaged in any form of illegal competition with Blue Wave; they are not using any of Blue Wave's propriety information; they are not violating the terms of any agreement that they are parties to; they have not engaged in any illegal conduct; and they have not engaged in "theft" of Blue Wave's proprietary information. *See id*. at 1-2.

### *The Present Action*

70.    Freetime Fun, Defendant Coxworth and Defendant Clements' misconduct has and will inevitably continue to harm Blue Wave and provide a competitive advantage to Freetime Fun, Defendant Coxworth and Defendant Clements.

---

[6] *See* **Exhibit F**, Letter from Defendant Coxworth and Freetime Fun sent via email on October 18, 2021.

71.    Blue Wave has a legitimate business interest in preventing Defendants from exploiting or appropriating the goodwill of its customer relationships, its documents and its proprietary product manuals, illustrations and product copies developed over the years, its vendor relationships, its supplier relationships and particularly the goodwill of the customer, vendor and supplier relationships and vendor relationships developed and nurtured by Defendant Clements using Blue Wave's resources during his employment at Blue Wave.

72.    Blue Wave has been and will continue to be damaged unless Defendants are restrained from using the ill-gotten knowledge, documents, information and violating Defendant Coxworth's Nondisclosure Agreement, Defendant Coxworth's Employment Agreement and Defendant Clements' Stock Option Agreement, and the law.

<u>**COUNT I**</u>
<u>**VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016**</u>
**(Defendant Coxworth and Defendant Clements)**

73.    Blue Wave repeats and realleges paragraphs 1 through 73 above as if fully stated herein.

74.    As a result of Defendant Coxworth's shareholder stake in Blue Wave and Defendant Clements' former employment and position of trust with Blue Wave, Defendant Coxworth and Defendant Clements obtained access to Blue Wave's trade secret information, including but not limited to, information related to pricing,

- 21 -

technical approaches, technical documents and manuals, bidding strategies, bidding proposal methodology, unique customer information, vendor information, supplier information, pricing strategies and product manuals, illustrations and product copies. These documents and information are unique to Blue Wave and derive their independent economic value from not being commonly known or available to the public.

75.   Blue Wave takes reasonable steps to protect the secrecy of its trade secret information discussed herein, which includes, but is not limited to, use of passwords, security time-outs, Non-Disclosure Agreements, Non-Use Agreements, Non-Compete Agreements, Non-Solicitation Agreements, Stock Option Agreements containing restrictive covenants, restrictive covenant agreements, and confidentiality policies.

76.   Significantly, Blue Wave employed such security measures to protect the secrecy of trade secret information that Defendant Coxworth and Defendant Clements have taken from Blue Wave and are now using in connection with the operation of Defendant Freetime Fun.

77.   The trade secret information improperly disclosed or otherwise misappropriated by Defendant Coxworth and Defendant Clements is utilized by Blue Wave, or intended for use by Blue Wave, in interstate, and international commerce.

- 22 -

78.    Notwithstanding Blue Wave efforts to maintain the confidentiality of its trade secrets, Defendant Coxworth and Defendant Clements obtained confidential, proprietary, and trade secret information from Blue Wave's computer systems and without authorization from Blue Wave, through Defendant Coxworth's ownership interest in Blue Wave and while Defendant Clements was still employed with Blue Wave.

79.    In doing so, Defendant Coxworth violated his Non-Disclosure Agreement and Employment Agreement which prohibits disclosure of confidential, proprietary, and trade secret information.

80.    Much like Defendant Coxworth, Defendant Clements violated his Stock Option Agreement which prohibits disclosure of confidential, proprietary, and trade secret information.

81.    Defendant Coxworth and Defendant Clements knew and/or had reason to know that the disclosures and utilization of the same were illegal and violated Defendant Coxworth and Defendant Clements' respective obligations to Blue Wave and the law.

82.    Defendant Coxworth and Defendant Clements' misappropriation of Blue Wave's trade secrets gave and continues to give Defendant Freetime Fun, Defendant Coxworth and Defendant Clements an unfair and unjust competitive advantage.

- 23 -

83.     The use and disclosure, and even threatened use and disclosure of Blue Wave's trade secrets by Defendant Coxworth and Defendant Clements entitles Blue Wave to injunctive relief and damages, pursuant to 18 U.S.C. § 1836(b)(3).

84.     At all material times, Defendant Coxworth and Defendant Clements acted willfully, maliciously, and in bad faith.

85.     Blue Wave has suffered and will continue to suffer irreparable harm as a result of Defendant Freetime Fun, Defendant Coxworth and Defendant Clements' misappropriation.

86.     Wherefore, Blue Wave demands that the Court enter judgment against Defendant Freetime Fun, Defendant Coxworth and Defendant Clements:

      a.     Enjoining Defendant Freetime Fun, Defendant Coxworth and Defendant Clements, pursuant to 18 U.S.C. § 1836(b)(3)(A), from using or disclosing Blue Wave's trade secret information for the benefit of himself or otherwise;

      b.     Requiring Defendant Coxworth and Defendant Clements to immediately return all property and proprietary information belonging to Blue Wave in their possession, custody, or control;

      c.     Issuing an order providing for the seizure of all of Blue Wave's trade secret information and other Blue Wave property necessary to prevent the

propagation or dissemination of Blue Wave's trade secret information pursuant to

18 U.S.C. § 1836(b)(2)(A).

       d.    Awarding Blue Wave damages as set forth in 18 U.S.C.

§ 1836(b)(3)(B);

       e.    Awarding Blue Wave such other and further relief as the Court

deems just and proper.

### COUNT II
### MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF
### THE GEORGIA TRADE SECRETS ACT
### O.C.G.A § 10-1-760 ET. SEQ.
### (Defendant Coxworth and Defendant Clements)

87.    Blue Wave repeats and realleges paragraphs 1 through 73 above as if

fully stated herein.

88.    As a result of Defendant Coxworth's shareholder stake in Blue Wave

and Defendant Clements' employment and position of trust with Blue Wave,

Defendant Coxworth and Defendant Clements were provided access to Blue Wave's

valuable trade secrets, including but not limited to pricing strategies, bidding

strategies and methodology, employee information, technical or non-technical data,

methods, techniques, processes, financial data, and lists of actual or potential

customers or suppliers.

89.    Defendant Coxworth and Defendant Clements misappropriated Blue Wave's trade secret information, collecting such information from Blue Wave's computer systems.

90.    Defendant Coxworth and Defendant Clements's misappropriation of Blue Wave's trade secret information violated Defendant Coxworth's Non-Disclosure Agreement and Defendant Clements' Stock Option Agreement, respectively.

91.    Defendant Coxworth's Non-Disclosure Agreement and Defendant Clements' Stock Option Agreement are all aimed at preventing the misappropriation of trade secret information.   Such policies—which were acknowledged by Defendant Coxworth and Defendant Clements—are just one way that Blue Wave protects its trade secret information.   Blue Wave also protects its trade secret information by conducting on-the-job security training and utilizing occupational security best practices; implementing various electronic security measures, such as use of passwords, security time-outs on computers, and segregation of confidential information; and employing various physical security measures, such as placing locks on offices, doors, and file cabinets.

92.    In his capacity as a shareholder in Blue Wave, Defendant Coxworth unlawfully disclosed or otherwise misappropriated Blue Wave's trade secret information.

010-9290-4896/4/AMERICAS

93.     Through his employment with Blue Wave, Defendant Clements unlawfully disclosed or otherwise misappropriated Blue Wave's trade secret information.

94.     Defendant Coxworth and Defendant Clements knew and/or had reason to know that the disclosures and were illegal and violated Defendant Coxworth and Defendant Clements' obligations, both contractual and otherwise, to Blue Wave.

95.     Defendant Coxworth and Defendant Clements' misappropriation of Blue Wave's trade secrets gave and continues to give Defendant Coxworth and Defendant Clement an unfair and unjust competitive advantage through their new roles with the direct competitor, Defendant Freetime Fun.

96.     The information misappropriated by Defendant Coxworth and Defendant Clement constitutes trade secrets under the Georgia Trade Secrets Act.

97.     The use and disclosure, and even threatened use and disclosure of Blue Wave's trade secrets by Defendant Coxworth and Defendant Clements in their new roles with Defendant Freetime Fun entitles Blue Wave to injunctive relief and damages, pursuant to the Georgia Trade Secrets Act.

98.     At all material times, Defendant Coxworth and Defendant Clements acted willfully, maliciously, and in bad faith.

99.     Blue Wave has suffered and will continue to suffer irreparable harm as a result of Defendant Coxworth and Defendant Clements misappropriation with Defendant Freetime Fun.

100.    Wherefore, Blue Wave demands that the Court enter judgment against Defendant Coxworth and Defendant Clements:

a.     Enjoining Defendant Freetime Fun, Defendant Coxworth and Defendant Clements, pursuant to the Georgia Trade Secrets Act, from using or disclosing Blue Wave's trade secret information;

b.     Requiring Defendant Coxworth and Defendant Clements to return all Blue Wave's property and any other proprietary information belonging to Blue Wave in their possession, custody, or control;

c.     Awarding Blue Wave damages as set forth in the Georgia Trade Secrets Act;

d.     Awarding Blue Wave attorneys' fees as set forth in the Georgia Trade Secret Act; and

e.     Awarding Blue Wave such other and further relief as the Court deems just and proper.

010-9290-4896/4/AMERICAS

**COUNT III**
**VIOLATION OF GEORGIA UNIFORM DECEPTIVE TRADE**
**PRACTICES ACT**
**O.C.G.A. § 10-1-370 ET. SEQ.**
**(Defendant Freetime Fun)**

101.   Blue Wave repeats and realleges paragraphs 1 through 73 above as if fully stated herein.

102.   Defendant Freetime Fun engaged in deceptive acts and/or practices by offering the same four product lines that Blue Wave offers; by copying and circulating the Blue Wave warranty verbatim; by using the Blue Wave manual layout and illustrations without permission and passing them on to consumers as their own; and by copying Blue Wave's product copy for the purposes of selling Freetime Fun products to consumers.

103.   These deceptive acts and/or practices involves trade practices that implicate consumer protection concerns.

104.   These deceptive acts and/or practices occurred during the course of conduct involving trade, commerce and have and will continue to have an impact on commercial transactions.

105.   Defendant Freetime Fun's deceptive acts and/or practices proximately caused damages to Blue Wave in the amount to be proven at trial, plus interest, attorney fees and costs.

- 29 -

106.   Defendant Freetime Fun's deceptive acts and/or practices entitles Blue Wave to injunctive relief.

107.   At all material times, Defendant Freetime Fun acted willfully, maliciously, and in bad faith.

108.   Blue Wave has suffered and will continue to suffer irreparable harm as a result of Defendant Freetime Fun's deceptive acts and/or practices.

109.   Wherefore, Blue Wave demands that the Court enter judgment against Defendant Freetime Fun:

   a.   Enjoining Defendant Freetime Fun from their continued deceptive acts and/or practices as outlined above;

   b.   Requiring Defendant Freetime Fun's deceptive acts and/or practices to return and/or destroy all Blue Wave's property and any other proprietary information belonging to Blue Wave in their possession, custody, or control that are related to Defendant Freetime Fun's deceptive acts and/or practices;

   c.   Awarding Blue Wave damages as set forth in the Georgia Uniform Deceptive Trade Practices Act;

   d.   Awarding Blue Wave attorneys' fees as set forth in the Georgia Uniform Deceptive Trade Practices Act; and

   e.   Awarding Blue Wave such other and further relief as the Court deems just and proper.

## COUNT IV
## BREACH OF NONDISCLOSURE AGREEMENT
## AND EMPLOYMENT AGREEMENT
### (Defendant Coxworth)

110.   Blue Wave repeats and realleges paragraphs 1 through 73 above as if fully stated herein.

111.   The Non-Disclosure Agreement is a valid and binding enforceable contract supported by good and valuable consideration.

112.   The Employment Agreement is a valid and binding enforceable contract supported by good and valuable consideration.

113.   Blue Wave has performed all obligations necessary in order to demand specific performance of the Non-Disclosure Agreement and Employment Agreement by Defendant Coxworth.

114.   Pursuant to the Non-Disclosure Agreement, Coxworth is prohibited from using or allowing others to use, copy, or disclose or permit any person access to any Confidential Information as defined in the Non-Disclosure Agreement.

115.   This prohibition binds, restricts and prevents Coxworth from disclosing Confidential Information for five years from the date of possession, knowledge or acquisition of Confidential Information or until May 26, 2022 (five years from the date of the Non-Disclosure Agreement), *whichever is longer.*

116.   The confidentiality provisions and the related restrictions on use provisions contained in the Non-Disclosure Agreement are valid and enforceable

- 31 -

under the laws of the State of Georgia.  The provisions are reasonably calculated to protect Blue Wave's legitimate business interests, which include, but are not limited to, protection of Blue Wave's confidential, proprietary information, including trade secrets.

117.   Defendant Coxworth has improperly disclosed and/or otherwise unlawfully misappropriated and/or used Blue Wave's confidential, propriety information—including its trade secrets—for the benefit of himself and Defendant Freetime Fun, in violation of his Non-Disclosure Agreement.  Further, his improper disclosure, unlawful misappropriation and use of Blue Wave's confidential, propriety information—including trade secrets—is ongoing.

118.   Defendant Coxworth's actions, including those described above, constitute breaches of the Non-Disclosure Agreement.

119.   Further, Defendant Coxworth's Employment Agreement prohibits disclosure of Trade Secrets as defined in the Employment Agreement for so long as such information continues to be a Trade Secret, and Defendant Coxworth's actions, including those described above, constitute breaches of the Employment Agreement.

120.   As a direct and proximate result of Defendant Coxworth's breaches of the Non-Disclosure Agreement and Employment Agreement, Blue Wave has suffered and will continue to suffer great and irreparable harm resulting in considerable damages that cannot fully be ascertained at this time.  In addition, or in

- 32 -

the alternative, Blue Wave has suffered damages in an amount to be determined at trial.

121.   Blue Wave has a substantial likelihood of success on the merits of this claim and injunctive relief would serve the public interest.

122.   Wherefore, Blue Wave is entitled to and requests that the Court enter judgment against Defendant Coxworth:

a.   awarding Blue Wave a permanent injunction to enforce the Non-Disclosure Agreement and the Employment Agreement provisions;

b.   awarding Blue Wave damages in an amount to be determined at trial, together with interest;

c.   awarding Blue Wave its reasonable attorneys' fees and cost incurred; and

d.   awarding Blue Wave such other and further relief as the Court deems just and proper.

## COUNT V
## BREACH OF THE STOCK OPTION AGREEMENT
### (Defendant Clements)

123.   Blue Wave repeats and realleges paragraphs 1 through 73 above as if fully stated herein.

124.   The Stock Option Agreement is a valid and binding enforceable contract supported by good and valuable consideration.

- 33 -

125.   Blue Wave has performed all obligations necessary in order to demand specific performance by Defendant Clements.

126.   Pursuant to the Nondisclosure and Nonuse provisions in Section 5 of the Stock Option Agreement, Clements is prohibited from disclosing any of Blue Wave's Confidential Information or Trade Secrets at any time, during his employment with Blue Wave and for a period of one (1) year thereafter.

127.   Pursuant to the patents and inventions provisions in Section 6 of the Stock Option Agreement, Clements plainly acknowledged that all inventions, innovations, improvements, developments, methods, designs, analyses, drawings, reports, and all similar or related information which relates to Blue Wave's or any of its subsidiaries' actual or demonstrably anticipated business, research and development or existing or demonstrably anticipated future products or services and which are conceived, developed or made by Defendant Clements while employed by the Blue Wave belong to Blue Wave.

128.   Pursuant to the non-solicitation provisions in Section 7 of the Stock Option Agreement, Defendant Clements is prohibited from soliciting, diverting or contacting Blue Wave customers, on his own behalf or on behalf of others, for purposes of providing or offering products or services competitive with the products or services offered by Blue Wave during his employment by Blue Wave and for a period of one (1) year thereafter.

129.   Pursuant to the non-competition provisions in Section 8 of the Stock Option Agreement, Defendant Clements is prohibited from directly or indirectly, serving in an executive or management capacity, including as an officer or director, or otherwise perform or undertake any duty or responsibility substantially similar to any duty or responsibility he performed or had undertaken for Blue Wave for a period of one (1) year after the termination of his employment with Blue Wave.

130.   The nondisclosure and nonuse, patent and invention, non-solicitation and non-compete provisions contained in the Stock Option Agreement are valid and enforceable under the laws of the State of Georgia.  The provisions are reasonably calculated to protect Blue Wave's legitimate business interests, which include, but are not limited to, protection of Blue Wave's confidential, proprietary information, including trade secrets.

131.  Defendant Clements has improperly disclosed, competed against, solicited, and/or otherwise unlawfully misappropriated and/or used Blue Wave's confidential, propriety information—including its trade secrets—for the benefit of himself and Defendant Freetime Fun, in violation of his Stock Option Agreement and the provisions outlined herein.  Further, his improper disclosure, unlawful misappropriation and use of Blue Wave's confidential, propriety information—including trade secrets—is ongoing.

132.   Defendant Clements' actions, including those described above, constitute breaches of the Stock Option Agreement.

133.   As a direct and proximate result of Defendant Clements' breaches of the Stock Option Agreement, Blue Wave has suffered and will continue to suffer great and irreparable harm resulting in considerable damages that cannot fully be ascertained at this time.  In addition, or in the alternative, Blue Wave has suffered damages in an amount to be determined at trial.

134.   Blue Wave has a substantial likelihood of success on the merits of this claim and injunctive relief would serve the public interest.

135.   Wherefore, Blue Wave is entitled to and requests that the Court enter judgment against Defendant Clements:

a.   awarding Blue Wave a permanent injunction to enforce the Stock Option Agreement;

b.   awarding Blue Wave damages in an amount to be determined at trial, together with interest;

c.   awarding Blue Wave its reasonable attorneys' fees and cost incurred; and

d.   awarding Blue Wave such other and further relief as the Court deems just and proper.

## COUNT VI
## BREACH OF FIDUCIARY DUTY
### (Defendant Coxworth)

136.   Blue Wave repeats and realleges paragraphs 1 through 73 above as if fully stated herein.

137.   As a Blue Wave shareholder, Defendant Coxworth was entrusted with Blue Wave's confidential information, and, as such, owed a fiduciary duty to Blue Wave to not divulge, disclose, expose, or misuse such information.   Further, Defendant Coxworth acknowledged directly in the Non-Disclosure Agreement the fact that Blue Wave disclosed confidential, valuable and proprietary information to him.

138.   Defendant Coxworth also owed Blue Wave a fiduciary duty not to act contrary to Blue Wave's interest, which included, but was not limited to, competing with or providing a competitive advantage to direct or indirect competitors while still maintaining an interest in Blue Wave.

139.   Defendant Coxworth breached his fiduciary duties, by, *inter alia*: disclosing and/or using Blue Wave's confidential and proprietary information to/for his own personal gain while maintaining an interest in Blue Wave.

140.   As a direct and proximate result of Defendant Coxworth's willful breach of his fiduciary duties to Blue Wave, Blue Wave has suffered and will continue to suffer damages in the form of lost business, lost revenue, lost goodwill,

compensatory damages and other immeasurable and irreparable injuries which cannot possibly be fully ascertained at this time.

141.  Based on the foregoing wrongful conduct by Defendant Coxworth, which was knowing, willful, intentional, malicious, reckless and/or grossly negligent, Defendant Coxworth breached his fiduciary duty to Blue Wave and Blue Wave is entitled to disgorgement of any compensation and/or distributions paid to Defendant Coxworth as well as an award of punitive damages.

142.  Wherefore, Blue Wave demands that the Court enter judgment against Defendant Coxworth:

a.  Requiring Defendant Coxworth to pay compensatory and punitive damages to Blue Wave in an amount to be fixed at trial, together with interest;

b.  Requiring Defendant Coxworth to disgorge all compensation and/or distributions;

c.  Awarding Blue Wave its costs incurred in connection with this action; and

d.  Awarding Blue Wave such other and further relief as the Court deems just and proper.

- 38 -

## COUNT VII
## BREACH OF EMPLOYEE DUTY OF LOYALTY
### (Defendant Clements)

143.   Blue Wave repeats and realleges paragraphs 1 through 73 above as if fully stated herein.

144.   Defendant Clements owed Blue Wave a duty of loyalty, good faith, fidelity, and trust when he was a Blue Wave employee, including, but not limited to, a duty to not engage in disloyal acts, such as misusing confidential information acquired during the course of his employment.

145.   Defendant Clements breached his duty of loyalty, as he misappropriated and improperly accessed Blue Wave's confidential and proprietary information all while still employed by Blue Wave, including but not limited to customer lists, vendor lists and supplier lists.

146.   As a direct and proximate result of Defendant Clements' willful breach of his duty of loyalty to Blue Wave, Blue wave has suffered and will continue to suffer damages in the form of lost business, lost revenue, lost goodwill, compensatory damages and other immeasurable and irreparable injuries.

147.   Based on the foregoing wrongful conduct by Defendant Clements, which was knowing, willful, intentional, malicious, reckless and/or grossly negligent, Defendant Clements breached his duty of loyalty to Blue Wave and Blue

Wave is entitled to disgorgement of any compensation and/or distributions paid to Defendant Clements as well as an award of punitive damages.

148.   Wherefore, Blue Wave demands that the Court enter judgment against Defendant Clements:

       a.      Requiring Defendant Clements to pay compensatory and punitive damages to Blue Wave in an amount to be fixed at trial, together with interest;

       b.      Requiring Defendant Clements to disgorge all wages, including commissions, paid to Defendant Clements after Defendant Clements' disclosure of Blue Wave's trade secret and confidential information;

       c.      Awarding Blue Wave its costs incurred in connection with this action; and

       d.      Awarding Blue Wave such other and further relief as the Court deems just and proper.

### COUNT VIII
### TORTIOUS INTERFERENCE WITH CONTRACT
**(Defendant Freetime Fun and Defendant Coxworth)**

149.   Blue Wave repeats and realleges paragraph 1 through 73 above as if fully stated herein.

150.   Defendant Freetime Fun and Defendant Coxworth have solicited and/or taken affirmative steps to solicit Defendant Clements with the intent to cause

- 40 -

Defendant Clements to breach his contractual relationship with Blue Wave by securing employment at Defendant Freetime Fun, a direct competitor of Blue Wave.

151.   At the time of Defendant Clements' hire by Freetime Fun in 2021, Defendant Freetime Fun and Defendant Coxworth knew that Defendant Clements was subject to non-competition restrictive covenants as well as other restrictive covenants as outlined herein with Blue Wave.  It is particularly apparent that Defendant Freetime Fun had knowledge of Defendant Clements' Stock Option Agreement given that Defendant Coxworth is both a shareholder in Blue Wave as well as the owner of Freetime Fun.

152.   The Defendants continue to employ Defendant Clements even with knowledge that Defendant Clements is subject to non-competition restrictive covenants as well as other restrictive covenants with Blue Wave.

153.   Defendant Freetime Fun and Defendant Coxworth's intentional and unlawful interference with Defendant Clements' Stock Option Agreement and the covenants contained therein has deprived Blue Wave of the economic benefit of its contracts with Defendant Clements.

154.   At all material times, Defendant Freetime Fun and Defendant Coxworth acted knowingly, willfully, intentionally, maliciously, recklessly or grossly negligent.

010-9290-4896/4/AMERICAS

155.   Blue Wave has a substantial likelihood of success on the merits of this claim and the requested relief would serve the public interest.

156.   Wherefore, Blue Wave is entitled to and requests that the Court enter judgment against the Defendants:

   a.   awarding Blue Wave compensatory and punitive damages in an amount to be determined at trial, together with interest;

   b.   awarding Blue Wave its reasonable attorneys' fees and costs incurred; and

   c.   awarding Blue Wave such other equitable and further relief as the Court deems just and proper.

<u>**COUNT IX**</u>
**<u>TORTIOUS INTERFERENCE WITH CONTRACT WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST DEFENDANT FREETIME FUN</u>**
**(Defendant Freetime Fun and Defendant Coxworth)**

157.   Blue Wave repeats and realleges paragraph 1 through 73 above as if fully stated herein.

158.   Blue Wave had a reasonable expectation of entering in business relationships and continued business relationships with customers and vendors, including but not limited to Plusone.

159.   Defendant Freetime Fun and Defendant Coxworth were aware that Blue Wave reasonable expectation of entering in business relationships and

- 42 -

continued business relationships with customers and vendors, including but not limited to Plusone.

160.   Specifically, Defendant Freetime Fun and Defendant Coxworth has purposefully interfered with Blue Wave's legitimate business operations through its decisions to:  offer the same four product lines that Blue Wave offers; copy and circulate the Blue Wave warranty verbatim; use the Blue Wave manual layout and illustrations without permission and pass them on to consumers as their own; and copy Blue Wave's product copy for the purposes of selling Freetime Fun products to consumers.

161.   Defendant Freetime Fun and Defendant Coxworth's conduct have interfered with Blue Wave's reasonable expectation of entering into business relations from ripening into valid business relationships.

162.   Freetime Fun's purposeful, intentional and unlawful interference has deprived Blue Wave of economic benefit as potential customers, vendors and suppliers are being diverted from Blue Wave to Freetime Fun.

163.   At all material times, Defendants acted knowingly, willfully, intentionally, maliciously, recklessly or grossly negligent.

164.   Blue Wave has a substantial likelihood of success on the merits of this claim and the requested relief would serve the public interest.

165.    Wherefore, Blue Wave is entitled to and requests that the Court enter judgment against the Defendants:

a.    awarding Blue Wave compensatory and punitive damages in an amount to be determined at trial, together with interest;

b.    awarding Blue Wave its reasonable attorneys' fees and costs incurred; and

c.    awarding Blue Wave such other equitable and further relief as the Court deems just and proper.

## COUNT X
## CONVERSION
### (Defendant Freetime Fun and Defendant Coxworth)

166.    Blue Wave repeats and realleges paragraph 1 through 73 above as if fully stated herein.

167.    Defendant Freetime Fun and Defendant Coxworth, without authorization from Blue Wave, are selling, distributing, advertising and have copied Blue Wave's product manuals, illustrations and product copies in connection with their products and the same are copied from and substantially similar to those Blue Wave product manuals that are rightfully titled and in the possession of Blue Wave.

168.    Defendant Freetime Fun and Defendant Coxworth have Blue Wave's designs, product manuals, illustrations and product copies wrongfully in its possession.

- 44 -

169.    Blue Wave's has demanded that Defendant Freetime Fun and Defendant Coxworth cease using its designs, product manuals, illustrations and product copies.

170.    Defendant Freetime Fun and Defendant Coxworth refuse to cease using Blue Wave's designs, product manuals, illustrations and product copies.

171.    Defendant Freetime Fun and Defendant Coxworth's infringing acts were committed with knowledge or in reckless disregard of Blue Wave's rights.

172.    As a result of Defendant Freetime Fun and Defendant Coxworth's acts, the Defendants have made substantial profits and gains which they are not in law or equity entitled to retain.

173.    The aforementioned acts by Defendant Freetime Fun and Defendant Coxworth have damaged Blue Wave, and if not enjoined will continue to damage Blue Wave and cause it irreparable harm for which Blue Wave has no adequate remedy at law.

174.    Wherefore, Blue Wave is entitled to and requests that the Court enter judgment against the Defendants:

a.    awarding Blue Wave damages in an amount to be determined at trial, together with interest;

b.    awarding Blue Wave its reasonable attorneys' fees and costs incurred; and

    c.     awarding Blue Wave such other equitable and further relief as the Court deems just and proper.

**COUNT XI**
**CONSPIRACY**
**(Defendant Freetime Fun and Defendant Coxworth)**

175.   Blue Wave hereby repeats and incorporates by reference Paragraphs 1 through 73 above as if fully stated herein.

176.   Defendant Freetime Fun and Defendant Coxworth conspired to disseminate Blue Wave's confidential information and trade secrets as set forth herein.

177.   These Defendants also conspired to induce Defendant Clements to breach his Stock Option Agreement and the restrictive covenants contained therein.

178.   These Defendants also conspired to wholesale duplicate and convert Blue Wave's proprietary product manuals, illustrations and product copies for their own use in violation of the law.

179.   To achieve the objective of their conspiracy, these Defendants engaged in several overt acts, as described above, including but not limited to the dissemination of Blue Wave's Confidential Information and Trade Secret information, the hiring of Defendant Clements while he was subject to restrictive covenants with Blue Wave the wholesale duplication and conversion of Blue Wave's product manuals, illustrations and product copies.

- 46 -

180.   The aforementioned acts by Defendant Freetime Fun and Defendant Coxworth have damaged Blue Wave, and if not enjoined will continue to damage Blue Wave and cause it irreparable harm for which Blue Wave has no adequate remedy at law.

181.   Wherefore, Blue Wave is entitled to and requests that the Court enter judgment against the Defendants:

      a.     awarding Blue Wave damages in an amount to be determined at trial, together with interest;

      b.     awarding Blue Wave its reasonable attorneys' fees and costs incurred; and

      c.     awarding Blue Wave such other equitable and further relief as the Court deems just and proper.

## COUNT XII
## ATTORNEYS' FEES PURSUANT TO O.C.G.A. § 13-6-11
### (All Defendants)

182.   Blue Wave hereby repeats and incorporates by reference Paragraphs 1 through 73 above as if fully stated herein.

183.   As set forth herein, the Defendants have acted in bad faith, have been stubbornly litigious, and have caused Blue Wave unnecessary trouble and expense.

184.   Blue Wave is entitled to recover from the Defendants its reasonable expenses of litigation, including attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

- 47 -

## <u>JURY TRIAL DEMANDED</u>

Blue Wave demands a jury trial on all issues so triable.

Respectfully submitted this 10th day of December, 2021.

**SQUIRE PATTON BOGGS (US) LLP**

*/s/ David W. Long-Daniels*
David Long-Daniels
Georgia Bar No. 141916
david.long-daniels@squirepb.com
Phone:  (678) 272-3202
Lee M. Paris
Georgia Bar No. 359868
lee.paris@squirepb.com
Phone:  (678) 272-3208

**Squire Patton Boggs (US) LLP**
One Atlantic Center
1201 W. Peachtree St. NW
Suite 3150
Atlanta, GA 30309
Tel. (678) 272-3200
Fax. (678) 272-321

***Attorney for Plaintiff Blue Wave Products, Inc.***

## LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document filed with the Clerk of Court has been prepared in 14 point Times New Roam font, in accordance with Local Rule 5.1(C).

Dated:        December 10, 2021.

*/s/David W. Long-Daniels*
**David W. Long-Daniels**

- 49 -

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

BLUE WAVE PRODUCTS, INC., )
                     )
     Plaintiff, )        Civil Action No.:
                     )
     v. )
                     )
FREETIME, LLC, )       **JURY TRIAL DEMANDED**
JAMES COXWORTH, AND )
MARK CLEMENT )
                     )
     Defendants. )

## VERIFICATION

David Rossi, being of full age, hereby certifies as follows:

I am authorized on behalf of Plaintiff, Blue Wave Products, Inc. to make this verification.   The facts stated in the foregoing Verified Complaint are true and correct to the best of my knowledge. This verification is based on my personal knowledge, as well as knowledge and information provided to and obtained by me in in my capacity as the President and Chief Executive Officer of Blue Wave Products, Inc.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 9, 2021.    /s/ _____

                                   David Rossi